THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* BERT OWENS, Defendant-Appellant.

Second District   No. 81—50

Opinion filed November 1, 1982.—Rehearing denied December 3, 1982.

G. Joseph Weller and Josette Skelnik, both of State Appellate Defender's Office, of Elgin, for appellant.

J. Michael Fitzsimmons, State's Attorney, of Wheaton (Phyllis J. Perko and William L. Browers, both of State's Attorneys Appellate Service Commission, of counsel), for the People.

JUSTICE LINDBERG delivered the opinion of the court:

Defendant was charged by indictment filed in the circuit court of Du Page County with attempted murder, two counts of aggravated kidnaping, two counts of aggravated battery, and three counts of armed violence in violation of the Illinois Criminal Code. (Ill. Rev. Stat. 1979, ch. 38, pars. 8—4, 10—2(a)(3), 10—2(a)(5), 12—4(c), 12—4(b)(1), 33A—2.) During the pretrial period the court was advised that, with the exception of attempted murder, defendant had earlier been indicted in Cook County for the same offenses as a result of the same acts. The defendant moved to have the duplicate charges transferred and consolidated with the pending Cook County charges. The court granted that motion. Later, the circuit court of Cook County dismissed the charges against the defendant[1] and the Du Page County State's Attorney moved the Du Page Circuit Court to reinstate the charges previously transferred. The court granted that motion and defendant proceeded to jury trial on all counts charged in the original Du Page indictment. The jury found defendant guilty of two counts of armed violence, two counts of aggravated battery, and two counts of aggravated kidnaping and found him not guilty of attempt murder and one count of armed violence. The defendant was sentenced to 12 years for each aggravated kidnaping count and for the two armed violence counts, and five years for each aggravated battery count, these terms to run concurrently.

On October 21, 1979, Filiberto Sanchez was involved in a minor traffic accident with a car driven by Louis Owens. Sanchez, Owens and Michael Kincy, a passenger in the Owens' car, finding no damage to either car, agreed to have a few drinks together. On their way to a tavern in Cicero, Illinois, the three were joined by an individual on a motorcycle. That individual was later identified as the defendant, Bert Owens. Eventually, the group arrived at Mickey's Lounge. While at

---

[1]The record is silent as to the reason for this dismissal.

the lounge, Sanchez danced with a woman, later identified as Linda Shelton. After a time Sanchez suggested that he and Shelton go somewhere alone. As they were leaving the lounge, Sanchez was robbed at gunpoint. He later identified defendant as one of his assailants.

After the robbery, Sanchez was forced into his own automobile and taken into Du Page County. Upon reaching an open field located in Du Page County, Sanchez was told to take off his clothes. While he was doing so, Sanchez was knocked unconscious. He was stabbed repeatedly in the abdomen. When Sanchez later regained consciousness he was naked, bleeding profusely and without his car.

## I. REINSTATEMENT OF CHARGES

We turn first to defendant's contention that, having once transferred the charges to Cook County, the Du Page County Circuit Court lacked the power to reinstate these charges. In essence defendant's position is that transfer in this case amounted to a dismissal for improper venue, and that therefore the court lacked the power to try the case absent a return transfer from the circuit court of Cook County. He cites no case support for this characterization and relies on the opinions in *People v. Hill* (1966), 68 Ill. App. 2d 369, 216 N.E.2d 212, and *People v. McClellan* (1977), 46 Ill. App. 3d 584, 360 N.E.2d 1225, claiming that the reinstatement worked to deprive him of his constitutional right to proper venue. These cases are simply inapposite to the case at bar.

In *People v. Hill* (1966), 68 Ill. App. 2d 369, 216 N.E.2d 212, the court was presented with a case in which the charging instrument was utterly devoid of any allegation which would establish venue. The court there held that the charge that a crime occurred in a particular county was a material averment and found that the complaint was void due to this omission. The indictment in the case at bar did contain an allegation that the crimes charged were committed in Du Page County. Therefore, the documents were not, as were those in *Hill*, void *ab initio*.

Similarly, the reasoning in *People v. McClellan* (1977), 46 Ill. App. 3d 584, 360 N.E.2d 1225, is not dispositive. In that case a defendant was charged with counts of aggravated kidnaping, armed robbery, and attempted murder. Although the indictment alleged that all three crimes took place in Champaign County, proof adduced at trial showed that the stabbing which formed the basis for the charge of attempt murder took place in Cook County.

In the case at bar the indictments contained an averment that the

crime charged took place in Du Page County. No contention is made by defendant that the State's Attorney was unable to prove that averment at trial. Du Page County was not an improper venue such as were those in *Hill* and *McClellan*. Procedurally, the reinstatement of charges was proper. Contrary to defendant's position, the reinstatement of charges was also proper from a constitutional standpoint. The transfer of charges from one county to another does not automatically implicate the constitutional right to proper venue conferred by section 8 of article I of the Illinois Constitution (*People v. Ondrey* (1976), 65 Ill. 2d 360). In *Ondrey*, the court held that the administrative failure to transfer a charge from Williamson County to La Salle County did not render the latter court's acceptance of the guilty plea and order of imprisonment void. The court noted in *dictim* that the place of trial was not a jurisdictional matter.

▌ Defendant's contention that the trial court, having once transferred the case, lacked the jurisdiction or the power to try him on those charges is not supported by the case law. The courts in Illinois have recognized that a circuit court's power to try a defendant derives from the constitution and is not contingent upon the presence of a viable indictment. Further, it appears, in this case that a valid indictment with a proper allegation of place of the crime charged existed. No motion to quash that indictment was put before the Du Page court. In our opinion, reindictment would have been a useless administrative act. Since no argument can be made that the court lacked jurisdiction and it appears from the record that sufficient proof was adduced to show that the crime was perpetrated in Du Page County, the trial court's action is affirmed.

## II. ADMISSIBILITY OF THE KNIVES

During trial, the State moved the admission of two knives, People's Exhibits Nos. 24 and 25, into evidence. The first was a knife found and given to police by Edward Vaisvilas. Vaisvilas testified that he had loaned his car to defendant on the date of the offense and had found the knife in the car the following day. The second knife was one which had been seized by police from co-defendant Michael Kincy at the time of his arrest.

Defendant makes two arguments concerning the admission of the knives. First, he contends that this evidence was irrelevant to the victim's (Filiberto Sanchez) testimony that he did not see the knife. It is defendant's contention that Sanchez merely "believed" that defendant wore a knife. A reading of the victim's complete testimony indicates that he testified that both defendant and Kincy wore knives on their

belts. Although he did say that he did not "see the knife itself" this statement, taken in context, indicates merely that the victim did not see the blade. The record includes this exchange between Sanchez and the State's Attorney:

"Q. Similarly, the defendant Bert Owens, did you observe whether or not he had a knife on his person on the night or early morning hours of October 22, 1979?
A. Yes.
Q. Do you know where he carried the knife?
A. On the belt, too, but, you know, his knife looks a little bigger.
Q. You saw that he carried a knife?
A. Yes.
Q. Did you see the knife itself?
A. No."

Nor does the victim's inability to testify concerning the actual stabbing render the knives irrelevant. Expert testimony of Dr. Ertl, a surgeon and the victim's attending physician, indicated that the victim suffered an abdominal injury which could have been inflicted by either one of the knives. Further, a microanalyst testified that Exhibit No. 24, the knife turned in by Vaisvilas, was found to have blood on it. A second microanalyst testified that no blood was found on People's Exhibit No. 25, the knife seized from Michael Kincy. Given the testimony contained in the record, it cannot reasonably be said that the knives were irrelevant to the case at bar.

■ The case law establishes that admission of a weapon may be error if there is an absence of evidence establishing a connection between the weapon and the offense charged. (*People v. Pointer* (1981), 93 Ill. App. 3d 1064, 418 N.E.2d 1.) In determining whether a sufficient connection has been established, the totality of the evidence must be considered, and no one single factor is completely determinative. (See *People v. Jones* (1961), 22 Ill. 2d 592.) In *Jones*, the court held that where an eyewitness had testified that he saw defendant fire a "long-barrelled chrome plated gun," that the People's exhibit resembled that gun and the evidence indicated that the gun had been found in the car in which defendant had been arrested, a sufficient connection existed. (Accord, *People v. Smith* (1952), 413 Ill. 218.) In this case the totality of the evidence is indicative of a sufficient connection, thus justifying admission. Defendant's reliance on the case of *People v. Pointer* (1981), 93 Ill. App. 3d 1064, 418 N.E.2d 1, for the proposition that the knives, particularly the one belonging to Kincy, should not have been admitted is misplaced. The defendant there was

charged with indecent liberties and there was no evidence that he had either used or carried a gun in that offense. The court held that admission of the gun under those circumstances was error.

The case before us does not present such a scenario. Here Exhibit No. 24 was identified as belonging to Owens, the testimony of Sanchez indicated that Owens had carried a knife during the offense, and the testimony of the pathologist indicated that the blade on that knife could have caused Sanchez' wound and that blood was present on the blade. Exhibit No. 25, the knife taken from Kincy, was similarly connected to the offense.

■ Defendant's second argument concerning the knives focuses on the testimony of Officers Wagge and Biziarek. These officers originally misidentified People's Exhibit No. 24 as the knife which was taken from Michael Kincy. They later changed their testimony on this point. It is defendant's position that the effect of this misidentification was to utterly confuse the jury and to vitiate any possible probative value the knives might have had. However, the jury in this case heard both pieces of testimony and as trier of fact, had it within its power to make a determination as to the credibility of either version. The impeachment here effects weight and not admissibility. (*People v. Gow* (1978), 65 Ill. App. 3d 723, 382 N.E.2d 673.) The trial court did not err in admitting the knives.

### III. PROSECUTORIAL COMMENT

During closing argument the State's Attorney made the following statement:

> "And he [defense counsel] says that I want to convict the defendant. I want to see that justice is done. I have a job to do. My job is to prosecute criminal cases. Certainly I believe in what I am doing, but what I believe in this particular case doesn't make any difference. I wouldn't be here if I didn't believe he was guilty, but that's my decision to make."

The defendant contends that this statement amounted to a personal vouching by the State's Attorney for the defendant's guilt. We disagree.

■ First, a reading of the complained of statement indicates that the prosecutor neutralized any vouching effect by his assertion that his opinion didn't matter. Secondly, the record reveals that defense counsel throughout his closing argument hinted that the prosecutor had some personal motive or vendetta in the instant case. Viewed in this light, the prosecutor's statements were no more than a permissible response to an issue raised first by the defendant. It was invited

comment. *People v. Kelly* (1975), 25 Ill. App. 3d 753, 324 N.E.2d 82.

██ The defendant also contends that the prosecutor's description of him as "hideous" was error. We decline to reverse on this basis. Where the statements made by the prosecutor in closing argument have some basis in the evidence, the prosecutor can reflect unfavorably on the defendant, denounce his wickedness and even indulge in invective. *People v. Moore* (1956), 9 Ill. 2d 224; *People v. Delgado* (1975), 30 Ill. App. 3d 890, 333 N.E.2d 633 (holding that a characterization of defendant's conduct is "reprehensible" did not constitute improper closing argument).

### IV. VERDICT FORMS

At the instruction conference, defendant tendered and the trial court refused, separate verdict forms for each count. Instead, the court submitted forms for attempt murder, aggravated kidnaping, aggravated battery based upon great bodily harm, aggravated battery based on the presence of a dangerous weapon, and a single armed violence form listing each of the other three offenses as possible predicate felonies. It is defendant's contention that, the validity of the armed violence convictions evade review since it cannot be determined which of the felonies served as predicates for the armed violence charges of which defendant was found guilty. Therefore, according to defendant, the armed violence convictions must fall, since it is possible that the jury predicated the armed violence convictions upon the attempt murder, a charge of which defendant was found not guilty.

Defendant cites the newly adopted IPI Criminal Second which mandates the submission of separate verdict forms for each county (Illinois Pattern Jury Instruction, Criminal, No. 26.01 (2d ed. 1981)). We note that that provision had not been adopted at the time of trial in this case.

The trial court instructed the jury as follows on the crime of armed violence:

"A person, or one for whose conduct he is responsible as defined in these instructions, commits the crime of armed violence when while armed with a dangerous weapon he commits any felony under Illinois law.

Attempt murder and aggravated battery and aggravated kidnapping are felonies under Illinois law.

A person is considered armed with a dangerous weapon when he, or one for whose conduct he is responsible, carries on or about his person a firearm or knife with a blade at least three

(3) inches in length."

and

"To sustain the charge of armed violence, the State must prove the following propositions:
  FIRST: That the defendant or one for whose conduct he is responsible, committed either attempt murder or aggravated battery, or aggravated kidnapping; and,
  SECOND: That the defendant, or one for whose conduct he is responsible, was armed with a dangerous weapon.
If you find from your consideration of all the evidence that each of these propositions has been proved beyond a reasonable doubt, then you should find the defendant guilty.
  If, on the other hand you find from your consideration of all the evidence that any of these propositions has not been proved beyond a reasonable doubt then you should find the defendant not guilty."

█ Given these instructions, we find that it is unlikely beyond a reasonable doubt that the jury made a finding of guilty of armed violence predicated upon the one felony of which it found the defendant not guilty, attempted murder.

### V. DOUBLE ENHANCEMENT

Defendant initially argued that the armed-violence convictions were twice enhanced by virtue of the identical weapon in violation of the rationale of *People v. Haron* (1981), 85 Ill. 2d 261. The State responded first that no improper double enhancement exists in this case because kidnaping is a felony without the use of a weapon. Defendant acknowledged that *Haron* specifically addressed only a misdemeanor enhanced to a felony and then enhanced to armed violence as a result of the same weapon. Defendant maintains, however, that the rationale of *Haron* is equally applicable to the instant case.

Defendant's rationale is that defendant was separately charged with aggravated kidnaping by reason of being armed with dangerous weapons, a knife and handgun. Further, defendant contends that the handgun was impermissibly used a second time to elevate the conduct to armed violence.

█ We observe that the conviction for armed violence in count VII was based upon simple kidnaping, a Class 2 felony (Ill. Rev. Stat. 1979, ch. 38, par. 10—1). Furthermore, one of the jury's verdicts found defendant guilty of aggravated kidnaping based upon the infliction of great bodily harm. These verdicts established both kidnaping and aggravated kidnaping which are felonies without the use of the

handgun. The predicate felony used as one of the two elements of the armed-violence conviction was not enhanced by the handgun and knife. We decline to vacate defendant's conviction for armed violence charged in count VII.

■ As to the armed-violence conviction charged in count VIII, we conclude that the predicate offense for that charge was aggravated battery based upon the infliction of great bodily harm. Again, the predicate offense charged separately would be a Class 3 felony and no dangerous weapon was necessary to establish that offense as a felony. (Ill. Rev. Stat. 1979, ch. 38, par. 12—4(a).) The handgun and knife were used only to enhance the conduct to armed violence. No *Haron* violation occurred. See *People v. Haron* (1981), 85 Ill. 2d 261; *People v. Garcia* (1981), 103 Ill. App. 3d 779, 783, 431 N.E.2d 1234.

### VI. MULTIPLE CONVICTIONS

Defendant initially argued that the four underlying felonies based upon aggravated battery and aggravated kidnaping, and the armed-violence convictions could not stand as they were carved from the identical physical acts. This principle recently was reaffirmed in *People v. Donaldson* (1982), 91 Ill. 2d 164. *Donaldson* makes clear that the less-serious offense should be vacated. Consequently, defendant now requests that this court vacate the four predicate felonies rather than the two armed-violence convictions.

However, the State contends that both aggravated kidnaping convictions may stand. Only one kidnaping occurred, and the fact that the same act, stabbing, can be used to enhance a kidnaping by two different methods, use of a deadly weapon and infliction of great bodily harm, does not alter the fact that only one act occurred. Under the mandate of *People v. King* (1977), 66 Ill. 2d 551, no other result is permitted. An analysis of the elements of the offense is unnecessary in the context of such multiple convictions.

The identical reasoning is applicable to the two aggravated-battery convictions. In this context, the State places emphasis on the additional language of one charge alleging that injuries also were inflicted by striking "about the body with their fists." However, no evidence to prove that allegation was introduced at trial, and it cannot be considered by this court. In any event the simple fact is that a single act of aggravated battery was committed, and *People v. King* mandates that only one conviction be entered for that physical act.

■ Therefore, we vacate the convictions under counts II and III as based upon the same physical act of kidnaping, albeit aggravated by the infliction of great bodily harm, which was the offense upon

which the armed-violence conviction on count VII was predicated, which is affirmed. We similarly vacate the convictions under counts IV and V and affirm the conviction for armed violence under count VIII predicated upon aggravated battery. (*People v. King.*) The vacated convictions are both necessarily included offenses of the respective armed violence convictions and the less serious offenses as well. *People v. Donaldson.*

We decline to remand for resentencing on the armed-violence convictions as requested by defendant for the reason that he failed to demonstrate in what manner the trial court may have been influenced in its armed violence sentencing by its sentencing on the convictions which we have vacated. (*People v. Myers* (1980), 83 Ill. App. 3d 1073, 404 N.E.2d 1082.) Our examination of the record of the sentencing hearing similarly fails to demonstrate such influence.

In sum, we vacate defendant's two convictions for aggravated kidnaping and two convictions for aggravated battery and we affirm defendant's conviction for armed violence charged in counts VII and VIII. The judgment of the circuit court of Du Page County is affirmed in part and vacated in part.

Affirmed in part, vacated in part.

SEIDENFELD, P.J., and NASH, J., concur.